Case 22-1301, Frank Corridore versus Heidi Washington. Argument not to exceed 15 minutes per side. Mr. Rajan, you may proceed for the appellant. Good morning. Good morning, your honors, and may it please the court. Ruth Rajan on behalf of petitioner appellant Frank Corridore. I'd like to reserve four minutes for rebuttal. Because of this sentence, Mr. Corridore must spend the rest of his life with the device strapped to his body, chained to a wall for two hours each day under constant surveillance and intensive supervision. The question for this court is not whether this sentence is warranted, but rather whether it is custody. Contrary to the district court's conclusion, lifetime electronic monitoring is plainly custodial. The test for a custodial restriction comes from the Supreme Court's unanimous opinion in Jones v. Cunningham. There, the court said that the restriction must, quote, significantly restrain petitioner's ability to do those things which, in this country, free men are entitled to do. The parties agree that restrictions on movement constitute custody, and lifetime electronic monitoring restricts movement in several ways. First, and most prominently, the charging requirement requires that Mr. Corridore be tethered to an outlet for two hours every day, which totals to about a month over the course of a year. I would imagine, first and foremost, that would be true in all these cases, Munoz, in all these cases. I saw how you dealt with Munoz in your reply brief, and I'm sure your briefs are better than those in Munoz, but I'm curious how you would deal with that. And a secondary question to that is, what is the time, right? You're always going to have some charging component. So how do we draw the line? Is it an hour? Is it 30 minutes? So I'll take your question in part. So first, the way that we deal with Munoz, I think as a reply brief sets forth, Munoz is quite distinguishable here. Here, I mean, in Munoz, they did not address any arguments about a charging requirement, about the compelled presence requirement, or about the technical limitations created by the device, and that's because in Nevada, the lifetime electronic monitoring program does not have similar rules that the program does in Michigan, which is why the court in Munoz was concerned with a constitutional vagueness challenge to the lifetime electronic monitoring program. Here, we have a substantive challenge to Mr. Corradore's conviction. Second, the reason why, just because there exists a charging requirement doesn't mean that the custody requirement is satisfied, which is why we set forth four factors that the courts consider in our brief under the custody analysis. So while the charging requirement may restrict movement, which is one of the factors, there still has to implicate at least some of the other factors and on balance. So the time doesn't matter. It's got to be that, but you're in essence saying it's that plus something else. It's that plus something else, and time, I think time does have some relevance. So if you look at the circuit court cases about mandatory programming like alcohol rehabilitation programs or community service requirements. Sure, but that's 14 days, right? No, so the Second Circuit and Nowakowski dealt with a community service requirement of one day and still found that to be custodial because it restricted the individual's movement. And here, you can see that the charging requirement over the course of a year or over the course of the 20 years implicates much more time than what you have at issue in mandatory programming. But I assume, I mean, can I go back to the two hours? Because I'm just curious, what if it was five minutes? Would you have any issues? I think the fact that the lifetime electronic monitoring program operates by definition for life is relevant. So if you look at the course of the next 20 years. Wait, I'm sorry. Yeah, of course. And then I promised to get off this, but five, go back to my five-minute hypothetical. That alone would not create a problem. I think you would still have to look at the time frame over the course of the lifetime of the... But what if, I mean, this seems to be just dependent on battery technology. I mean, what if we get a battery that you can charge once a month? I think that would... Then this case would go away? I don't think this case would go away, but I would certainly think that changes the battery technology. So if the battery technology changes and improves and people don't have to charge as long, that would diminish the restriction on Mr. Cordoy's movement. But then you would still have to look at the analysis under the three other factors that we set forth in our brief. So whether it's part of the sentence, whether it involves intensive supervision, or whether it involves serious consequences for the individual. So I don't doubt that that would change the analysis under the movement factor, but it would certainly be... But it would still leave the other considerations that this court would still be there. And here, it's unchallenged that it's two hours per day that he has to be tethered to a charging outlet, correct? Yes, yes, Your Honor. It's set forth in the program rules that govern Michigan's Lifetime Electronic Monitoring Program. And one other note, so a meekie note in their brief, that the charging capacity of these batteries diminishes over time. So while it may start off as two hours, this may creep into a longer periods of time as the lifespan of the device goes on. And so your point is that two hours a day equates to one month per year? One month per year and 1.5 years over the course of 20 years. And because this is a lifetime restraint, I think it's important that the court at least, the court take note of the fact that the duration over the lifespan of the device is important. But this is not the only reason we think the Lifetime Electronic Monitoring Program restricts movement. There's also the ability for law enforcement personnel if the device malfunctions, or if they need to inspect the device, they can immediately command Mr. Coridore's presence. And the Supreme Court in Hensley dealt with... How many times have they done that? That's not in the record in this case, because to hear the district court dismiss the habeas petition on the pleading, so Mr. Coridore was not provided the opportunity to deduce any of those facts. And the respondents in their response brief, they say, oh, it doesn't necessarily happen all that often. But it's strange that they're the ones who are in possession of the information of how often they do that, and they can't even set forth here. But I think more important... Third and more importantly, the court in Hensley didn't say that it has to happen a certain number of times, but rather the fact that the petitioner has to live in fear that this authority exists and may be exercised, I think that's enough to satisfy the custody requirement. Can I ask you an unrelated question in your gap in time? Why didn't you just file a writ of quorum novus? I mean that... So a writ of... Both this court and other circuit courts have said that the writ of quorum novus is not available in federal court to challenge state court convictions, rather the writs of quorum novus have to be filed in the sentencing court. So here, he would have to use whatever the state equivalent is of that procedure to file a writ. And then the third reason and the third way that... But that doesn't... Right, that doesn't answer my question. My question was why, not where. Well, I'm sorry. Why didn't he file... He didn't file it in Michigan state courts, as far as I'm aware. Maybe you can correct me. No, he didn't file it in Michigan state courts. And I'm not aware of the reason he would not file a writ of quorum novus or what the procedure is under Michigan law, but our contention is that he's still entitled to vindicate his rights in federal court, which is important to us here. And the third way that lifetime electronic monitoring restricts Mr. Cordero's movement is through the technical limitations of the devices we set forth in our briefs. So he can't travel to locations with poor GPS signal, lack of access to a reliable... Are licensing cases handled that? I mean, it seems to me the licensing cases say, well, those aren't custody. No, so licensing cases, I think, deal with the more attenuated sort of restriction. Here, these are direct restrictions by the function of the device and also the program rules that are mandated. So the program rules... He never can have a driver's license seems pretty prohibitive. It is pretty prohibitive, but it does leave open other avenues for movement. And even then, the court considers those restrictions on balance. Here, Mr. Cordero, no matter how he travels, can't go to areas with poor electricity or poor GPS signal, and we think that's a serious enough impingement on his movement. And even if it's not a total restriction on his movement, the court in Jones and this court in cases like Kelsey v Pope make clear that even partial limitations or impingements on movement are enough to satisfy the custody requirement. I also wanna spend a few moments on the three other factors which respondent doesn't address in their brief in which the court didn't address in Munoz. So first, it's a fact that it is undisputed here. It is part of the judgment of sentence. Both the register of actions and the sentencing transcript have indicated that Mr. Cordero was sentenced to lifetime electronic monitoring, which distinguishes it from the cases that deal with collateral consequences, because here, it is a direct consequence of his conviction that he was sentenced to lifetime electronic monitoring. Second, it also involves intensive supervision. The Michigan Department of Corrections, which is also in charge of probation and parole, is in charge of the lifetime electronic monitoring program. In fact, it's housed in the exact same statutory provisions as probation and parole, which is evidence that the legislature conceives of these three forms of supervision as similar. And it also carries with it a realistic threat of incarceration. So this is an important point that AMICI make in their brief, that there are few instances of people who... Quite a few instances of people who have been inadvertently or arrested and detained for inadvertent violations. So cases where people who may have adjusted their device, registered as a device tampering, cases where people who lost device signal were then thrown into jail for weeks on end, and people whose location was misreported by their device. And we think that's relevant here under cases like Hensley, where... It's the closest circuit court case to what we've got here that comes out your way. So this is... There's no other case other than Munoz that is on lifetime electronic monitoring, but we think we've created persuasive analogies to both the mandatory programming cases, so cases like Nowakowski, coming out of the Second Circuit and talking about restrictions on movement. And then also the Second Circuit's decision, Poudry, which talks about consequences for individuals. We think we have similar consequences here, like harassment, assault, threats. All of those sorts of things are endemic to people who are on lifetime electronic monitoring. And we think those harms are cognizable and relevant to the custody analysis. How about a Third Circuit case, Piasecki? Piasecki is also relevant because it talks about... So Piasecki is a sex offender registration case, so while it's not directly about lifetime electronic monitoring, the way it discusses the relevance of the judgment of sentence, the relevance of supervision requirements, and the relevance of harms more generally, we think that's relevant to, and helpful for us, in terms of establishing that the custody requirement is satisfied. If your honors don't have any further questions, I'd like to reserve the rest of my time for rebuttal. What are we doing with the registration requirement? Have you waived that? No. No, your honors. So first, we think the easiest way to resolve this case is just on lifetime electronic monitoring. Looking at that alone? Alone, because there are many more people in Michigan who are sentenced to just lifetime electronic monitoring, as opposed to sex offender registration. But even if you all don't agree with that argument, we claim that the cumulative burden for both lifetime electronic monitoring and sex offender registration satisfy the custody analysis, and the district court failed to conduct that cumulative analysis here. Thank you. Thank you. Good morning, may it please the court. Assistant Attorney General Eric Jenkins on behalf of the respondent appellee. A threshold issue for any petitioner is in custody. This preserves the writ for severe restraints on liberty, and while custody extends beyond the four cells of the prison, courts, including this one, continue to emphasize that it is the physical nature of the restraints on liberty that drive the custody analysis. Cutting directly to the heart of the issue in this case, a petitioner such as Mr. Corridor, who is no longer on probation or electronic monitoring, is not in custody for purposes of habeas. As a starting point, it is the petitioner's burden to show that he is in custody. And he fails to do so in this case, because he fails to show how a lifetime electronic monitoring restricts his movement in any significant way. Well, what about the two hours per day that he must be charging his device? Yes. One thing about that is, a petitioner compared that to the one hour of community service case that came out of the Second Circuit. But the two hour charging requirement can be done at any time or anywhere. It can be done while they're sleeping. It can be done when they are eating breakfast in the morning, whenever, during the day. It just has to be charged for 24 hours, or two hours consecutive every 24 hours. There's no requirement that it has to be done at a certain time, or he has to go to a certain place to do it. So how does it work exactly? Is he plugging? The device is connected to his ankle, is that right? Can you explain how it works? My understanding is that it then has sort of a cord that would plug into a wall charging mount. So then he can, let's say he's sleeping, he can sit there in bed with it charged in, or if he just wants to sit at a desk for that period of time to charge that. He has to have a cord connecting his ankle monitor to the wall. That's my understanding. He could use an extension cord or something like that. I'm not sure. I wouldn't be sure if it plugs into. Yeah, if you plug into it. It's not like a removable battery or anything. You have to actually charge the device while it's connected to the person? That's correct. That seems pretty restrictive. I mean, how is that not restrictive? I mean, when we look at the cases dealing with SOAR and things like that, there's more restrictive stuff that even this court has found are not considered custody. I mean, is it a severe restraint on his movement? It's two hours per day that he has to charge his phone. I mean, most of us charge our phone for about that period of time. We're not connected to our phone. We leave our phone charging somewhere and can go about doing whatever we want to do. So like he couldn't go camping or anything like that if he's in the woods and there's no charging. There's no outlet there. There's no outlet, but I think he could bring some sort of charging. Do you use a portable charger? I believe so, yes. And also many of the things that... Can he go swimming? He can go swimming. If you look at the lifetime electronic monitoring agreement, and this is a point I disagree with Petitioner quite strenuously on, it says that the device cannot go be submerged below 60 feet of water. It doesn't say anything about not being able to swim. And my understanding is that... That's scuba diving below 60 feet. Yeah. Deep sea diving might be out or might be a problem, but he showers with it. He can bathe with it. And I believe he can go swimming with it. It's not a restriction. That's in the record. Yes. I believe both parties have referenced the lifetime electronic monitoring agreement. The only thing it indicates there is that you cannot submerge it below 60 feet of water. And also another point in that respect is Petitioner makes quite a bit of... Quite a bit about the lifetime electronic monitoring agreement says you can't go under awnings or trees. But again, Petitioner overstates this position. If you look at the lifetime electronic monitoring agreement, it doesn't say that. What it says is, if you were to have a GPS loss alert signal, you need to go to clear air and avoid awnings or trees. So Petitioner does this quite a bit in overstating the type of restrictions the lifetime electronic monitoring provisions instill on him. My understanding is he's able to go anywhere or any place without caveat or restriction. And another thing that the Petitioner does, and Amicus does this as well, is sort of conflates lifetime electronic monitoring while on parole versus lifetime electronic monitoring once off parole. They're quite different animals. The lifetime electronic monitoring while on parole is going to come with numerous other restrictions that are attendant to parole, but also is going to have more supervision because the person's on parole. Once off of parole and on lifetime electronic monitoring, there is this monitoring provision, but it's not going to be as intensive as when the person's on parole. So you're contending that he's off parole and therefore the less intrusive version applies, correct? That's correct. So what does he have to do vis-a-vis the requirements under your understanding other than wearing the ankle bracelet and charging it for two hours every day? What does he have to do? Yeah. My understanding is that if there's damage to the device or if there's an issue with the device, a malfunction, he should contact the probation department or parole for the Michigan Parole, Michigan, and that's about it. I mean, he can't cut it or tamper with it, obviously. That would be another, a separate offense. But even then, if you look at the... He doesn't have to report four times a year or any of those other kinds of requirements? Not under the lifetime electronic monitoring agreement. But he does have to report under the sex offender registration. He is still subject to the sex offender registration requirements. So why isn't that, I guess, picking up on what Judge Moore was saying. I mean, he has to report four times a year in person, right? He has to report in person if he wants to travel, certain travel, seven days, if he's going to be out of the country or something, he has to report in person. Changes of address, change of, you know, whatever, student status, some other things. You have to report in person. Why is that not... I mean, certainly some of these cases that Munoz talks about it, the recent case in the 11th Circuit, Clemens talks about it, Piasecki talks about it, having to report in person. And there are lines that are being drawn like four times a year, two times a year, annually, whatever it is. Why isn't four times a year fall on the line of kind of enough reporting that you're in custody? Well, and I believe this court's addressed that issue twice, both in Leslie and Houtzenroeder, and discussed how really the restriction is different in those cases, because he has to report no matter where he's at. So if he moves to a different state, he gets approval to do that, he's still going to have to report in that state. It doesn't restrict his movement to go certain places. He just has to report four times a year to a player, four times. But I guess I take it, reading some of those cases, it's the fact that you have to be somewhere four times a year. In other words, I have to be, I mean, that is a restriction in a way, right? I have to be, I can't be someplace else. I have to be there. Yeah, and I think the one problem with, there's some of the sister circuit cases that talk about community service and alcohol rehabilitation. One thing about those cases that distinguishes them is the alcohol rehabilitation and the community service were clearly part of the sentence. Whereas this court has already said twice that sex offender registration is a collateral consequence of the conviction. So then we get into this issue. Have we said that in connection with the Michigan approach that's involved here and where this was part of his sentences, I understand it. The court has not said that in terms of the specifically the Michigan sex offender registration. No, that is correct. And didn't the Michigan courts say that this is part of sentencing? I believe he said it was punitive, but I know this court in Houtzenroeder made this distinction and then also the concurrence in Leslie, Judge Clay, stated that those all, the Michigan cases were ex post facto analysis. And this court has said twice now, once in a concurrence and once in a majority, that the ex post facto analysis is much different than the restraint analysis, which includes whether or not it's punitive versus collateral for purposes of restraint under the habeas statute. Specifically in, in Mr. Corridor's case, was it stated or not that this was part of the sentence? Which part, the lifetime electrical monitoring? I don't know for sure off the top of my head of what the actual judge said during the sentencing, I would believe it was imposed during the sentencing. I believe so. Yes. Okay. So then it would seem to be part of the sentence if it's something that the trial judge says during sentencing. But then restitution, fines, costs are all things that are imposed during the sentence, but we clearly don't believe those are restraints on liberty for habeas purposes that constitute custody. So I don't know what the fact that it's. Well, but aren't they quite different fines, money? To some extent they are. I mean, some of the arguments that the petitioner is making, I don't, I think that he slips into that area of fines and costs of restitution. For instance, this subjective chill on his ability to go places that he seems to think happens with lifetime electric monitoring, you could say the same thing about a fine or restitution. You could say, I have a thousand dollars in fines that I have to pay. Therefore, I can't take a vacation this year. So this is chilling my ability to travel. So I think in some respects it is the same. Does it matter where it comes from if it restricts him from traveling? In other words, why do I care if it's, I think you would agree if he had to charge 24 hours a day, that would be custody, right? So why do I care where it comes from? In terms of this, the court. If it's a collateral, like you're not going to say in the, let's say you say you have to wear electronic monitoring. It's not going to say, and you have to charge 24 hours a day. That comes from the agreement. But it doesn't matter that it's not in the sentence. It still could result in custody, right? That's true. But I think there's, there's certain line drawing as to what becomes a severe restraint on liberty. 24 hours obviously is a completely different animal than two hours. So I think. How about 10 hours? 10 hours would probably be more along the lines of custody. Because you're like, think about how long you're awake every day. It's 12 hours. You're now asking somebody to be chained to the wall for 10 hours. But two hours, I mean, you, we do lots of things for two hours and we sleep for more than two hours. So I think that that's not an unreasonable restraint on liberty. Just one other, one point about the SOR issue. I do believe that the petitioner waived that. In his brief, on his petition on page 11, he specifically acknowledges that this court has acknowledged that this, that sex offender registration is not custodial. He also said, he also even says that. What about the argument of them combined? Because he's not really arguing it alone. He's saying them combined. Yeah. I think that one, I think that the lifetime electronic monitoring is less restrictive than the sex offender registration. And then you've got the fact that this court twice now has said that that is a collateral, sex offender registration is a collateral consequence and is not custody. So I think you combine the two. It doesn't, it doesn't amount to custody. You know, one that's less restrictive and one that this court has already said at least twice now is not a restriction on liberty. Again, I would, I would just point to the fact that the petitioner uses the words intensive supervision to describe lifetime electronic monitoring, but a lot of the points he makes are either subjective chills on movement or they're perceived speculative chills on movement. And I point out a number of issues, the awnings and trees that is really a red herring when you look at the agreement. That's not, it doesn't warrant you can't go around awnings and trees. The fact that he can't go swimming, that the lifetime electronic monitoring agreement doesn't speak to that. It says he can't go below 60 feet of water. So when you look at the actual agreement and what he is subject to, there is no provision in there that restricts his movement or gives any caveat or requirement that he be somewhere. What about the fact that he has to be available for them to fix or inspect it? I don't know that on, in reading the agreement and what I understand, I don't know that that's as immediate as it seems when the person is no longer on parole. When they're on parole, I think it's, again, a much different animal because if they're on parole, you've got a parole agent who's supervising them. They want to know where they are at all times. Lifetime electronic monitoring alone, it's not going to be the same. I don't, I don't even know that there's an urgency when that sort of alert happens or if there's an issue. And I think the lifetime electronic monitoring agreement says. So I haven't read the agreement, but does it change when it's on parole? I'm not sure I follow. It may not be in the agreement, but I understand that the parole agent explains that things change once parole is done. You understand that. Where is it in writing in our record? I'd have to look at the agreement. I don't know if it's in the agreement. But is it in the regulations? Is it in the statute? Is it some, is it on the MDOC website? Like where, where would you find it if you were looking for this? I can find that information out for the court. I don't know off the top of my head. But, but do you think it's publicly available somewhere? Um, I don't know if it's not just the parole officer. Yeah. I don't know. I don't know if it's a conversation between the parole officer and the parolee or if it's publicly available, but I can look that up and give that information to the court when he's not on parole anymore, who inspects it. I believe it's monitored in Lansing. Uh, and if he contacts and says there's an issue, I think wherever he's living at the time, a parole agent in that County would be asked to take a look at it. So assume hypothetically that what happens is that the device stops working. What is required of the person wearing the device at that point in time? Yeah. And looking at the lifetime electronic monitoring agreement, which is publicly available. It says he is to contact, uh, the parole department, uh, to then get a replacement or get that looked at to have it fixed. So the assumption is that he has to do that right away because otherwise he'd be in violation of the LEM. I believe it's right away or in a reasonable amount of time. And then if you look at the agreement and the statute for a violation, it says if you do violate this, meaning you don't notify, and I don't know if the word's immediate or if it's in a reasonable time, it's in the statute, uh, 750.520N. Uh, I believe then if he doesn't comply, then the case is referred to the Michigan state police for further investigation, which again, there's another point. I don't under, I don't believe based upon reading that statute that he's going to have agents knocking at his door the next day or the next week. My understanding is it's then referred to the Michigan state police for further investigation for possible criminal, uh, criminal investigation. But so far as you're representing to us, he doesn't need to go immediately to some state or local official. I don't want to misrepresent the record or what the statute says. It's right in the statute as to how, uh, what the immediacy is. And I'm not remembering off the top of my head. So you're telling us that we need to go to the statute and you've quoted 750.520N to the agreement, which I'm presuming is in the, uh, record in this case. And those are the two items that you say we can find the answers to our questions. You're saying the lifetime electronic monitoring agreement is in the record? That's what I'm asking you. Yes, it is. Both parties have referenced it in the briefing. And then all, yes, 750.520N is the statute. And you said it's publicly available. Yes, it's available on the Michigan Department of Corrections website. And I see I'm out of time unless the court has any other questions. I would just ask that the, uh, court affirm the district court's order dismissing, uh, Mr. Kordar's petition. Thank you very much for your time. I appreciate it. Thank you. Your honors, I'd like to pick off where opposing counsel left off. So rule eight of the rules governing lifetime electronic monitoring in Michigan say that in the event that the Department of Corrections needs to change or replace or electronic monitoring equipment, you will need to make yourself immediately available to Department of Corrections staff. That's the wording that comes from. I'm sorry. Where did that come from? The electronic monitoring agreement? Agreement. Yes. What does it say in the, I'm looking at 750.520. Do you know if it says anything? It does not say that. So much of the way that the program is regulated and governed is by. I'm sorry. I apologize. Can you give me where it's found? Yeah. So this is rule number eight of the, the program rules governing lifetime electronic monitoring, and it uses the language that the person has to make themselves immediately available, which is analogous to the requirement that the Supreme Court dealt with in Hensley. I also want to touch a little bit on the discussion about the charging requirement. So counsel on the other side says that you're not required to be in one place and that's enough for it not to be a restriction on movement. But if you look at third circuit cases like Barry, which dealt with a mandatory program there, it says the requirement that you be in one of several places is enough to implicate the custody requirement. And here that one of several places is an outlet to charge his electronic monitoring. And Judge Tapar, you brought up the point about a portable charger. I don't think that's also covered by the rules. So rule number nine says that you have to charge it on a standard 1100 volt electrical outlet. So my understanding is that the rules don't provide for somebody being able to use a portable charger. And you all also brought up the possibility of somebody charging while they sleep, but that's not our understanding of how monitoring devices work. So page 14 of the amicus brief says that many companies discourage people from charging while they sleep because people jostle, move around. So it's possible the device may get disconnected. So that's also not an available possibility to somebody who wants to avoid being incarcerated for violating the terms of their lifetime electronic monitoring program. I also want to touch on Judge Nalbandian's discussion about SORA as well. So our point is about the cumulative harms of both lifetime electronic monitoring and sex offender registration. So even if these two things individually are not enough to implicate the custodial requirement, the two requirements together are enough to implicate, are enough to implicate the custodial requirement for the reasons you set forth. People have to report quarterly and when there are changes in information and that combined. I guess my problem with that in this case is I don't see an argument. I think the argument was waived about SORA and I don't see an argument being made below about the cumulative effect either. I mean, it just seems like it was just taken off the table completely. Well, we disagree, Your Honor. So the arguments that Mr. Cordray made below in his habeas petition were that he was under the twin burdens of both lifetime electronic monitoring and sex offender registration. There are other references in the habeas petition to the fact that he's not subject, that the argument is not based on SORA alone. I thought the petition says, and I'm quoting, the question at bar is whether LEM constitutes a severe restraint on individual liberty. And then below you said SORA is largely beside the point. The reason that the issue was not, or SORA was not discussed as much below is because the Sixth Circuit case law on SORA alone is not sufficient. No, but then that goes back to Judge Nalvanian, which I'm sorry to interrupt you, but it goes back to his question that the cumulative argument, at least I don't see it below either. Can you just point me and I'll go read it where it was made below? So the exact page site is in our reply brief, but we think the clearest statement of this is when he makes the argument that he is under the twin burdens of both lifetime electronic monitoring and sex offender registration. But I thought that was one statement and then that was all I could find below. But is there some, is there an argument to this effect or some? There's also a discussion of the Third Circuit's decision in Pia Secchi about the burdens that are constituted by sex offender registration. We think both that statement combined with the discussion of the sex offender registry case law, the discussion of the impacts of lifetime electronic monitoring, that's enough to preserve the argument about sex offender registration. But even if you all are not certain about the argument or you think it's waived, we think we prevail because lifetime electronic monitoring alone is custodial. You didn't represent him below, right? No, no. Different counsel represent. Too bad for him. If the panel has no further questions, we urge the court to reverse the dismissal of the habeas petition and remand for further proceedings.  Thank you both for your argument. The case will be submitted.